IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TONY SEABORN,<br><br>    Plaintiff,<br><br>v.<br><br>LARRY H. MILLER MERCEDES BENZ, a corporation; and RAYMOND GUNN, STEVE ZITTING, SCOTT SCHETTLER, and PAUL KEIL, individuals,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION<br><br><br>Case No. 2:19-CV-941 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Compel Arbitration. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Tony Seaborn worked as a car salesman.[1] After working for Larry H. Miller Dealerships at one of its Toyota dealerships, Seaborn transferred to a Larry H. Miller Mercedes dealership (hereinafter, "LHM") in or around October of 2017.[2] At that location, Seaborn claims Defendant Paul Keil, the New Car Sales Manager for LHM, said that Seaborn could earn a 35% commission on every car sold.[3] As a part of Seaborn's new employment with LHM, he voluntarily entered into a broad arbitration agreement.[4]

---

[1] Docket No. 2-1, at 2.

[2] *Id.* at 4.

[3] *Id.* at 2–4.

[4] Docket No. 7, at 3; Docket No. 7-2, at 2.

1

In pertinent part, that Agreement states:

> The Company and I agree to resolve by final and binding arbitration any dispute, claim, or controversy, including but not limited to those related to my employment with or termination of employment by the Company, its affiliated entities, or their respective officers, directors, employees, or agents. Such disputes, claims, or controversies shall include, but not be limited to: tort claims; benefits claims; family or medical leave claims; claims of discrimination, retaliation, or harassment under federal or state law; claims of wrongful termination; claims for unpaid wages, reimbursements, meal and/or rest breaks; unfair competition, and misappropriation of trade secrets; and, any other claim that could be brought under local, state, or federal employment statutes or common law.[5]

Seaborn claims his employment with LHM was troubled from the beginning. Seaborn first alleges that Defendants Scott Schettler and Ray Gunn—the LHM Controller and LHM General Manager, respectively—delayed his hiring paperwork by nearly a month.[6] After Seaborn was hired, he alleges that Defendant Steve Zitting, the LHM General Store Manager, denied him access to walk-in sales.[7] Additionally, Seaborn claims LHM denied him access to training modules and trips, shortchanged his paychecks, withheld pools of sales leads, gave his sales to other employees, racially harassed and discriminated against him, retaliated against him for reporting workplace problems, and falsely accused him of stealing sales from other salespersons.[8] Ultimately, Seaborn claims he was wrongfully terminated in early November 2018, and that after his termination, LHM interfered with his subsequent attempt to secure employment with another dealership.[9]

---

[5] Docket No. 7-1, at 1.
[6] Docket No. 2-1, at 5.
[7] *Id.* at 6.
[8] *Id.* at 4–9.
[9] *Id.* at 9.

On November 22, 2019, Seaborn filed suit against LHM, Gunn, Zitting, Schettler, and Keil for discrimination, retaliation, breach of contract, breach of the duty of good faith and fair dealing, estoppel, fraudulent misrepresentation, unjust enrichment, conversion, and intentional interference with economic relations.[10] He seeks relief for back and front pay, compensatory and consequential damages, and punitive damages among other requests.[11] Defendants argue that all claims should be handled in arbitration.[12]

## II. DISCUSSION

The Federal Arbitration Act allows a party aggrieved by the failure to arbitrate under a written agreement to petition any district court which, "save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[13] If the Court is "satisfied that the issue involved . . . is referable to arbitration under such an agreement," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[14]

The Court's role under the Federal Arbitration Act is limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

---

[10] *Id.* at 1, 11–16.

[11] *Id.* at 17.

[12] Docket No. 7, at 3.

[13] 9 U.S.C. § 4.

[14] 9 U.S.C. § 3; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010).

3

dispute at issue.[15] Here, the parties dispute whether the arbitration clause applies to all Defendants and whether Plaintiff's claims fall within the scope of the arbitration clause.

A. INDIVIDUAL DEFENDANTS

The right to compel arbitration is a contractual right gained either by being a party to the arbitration agreement or "otherwise possess[ing] the right."[16] Seaborn concedes that LHM is a party to the contract and therefore acknowledges that arbitration is mandated in the claims against it;[17] however, he argues that Defendants Gunn, Zitting, Schettler, and Keil (hereinafter, the "individual Defendants") cannot enforce the arbitration agreement against Seaborn because they were not parties to the arbitration agreement.[18] This argument fails because the individual Defendants are expressly written into the arbitration agreement as "[LHM's] officers, directors, employees, or agents," and, even if they were not, they otherwise possess the right of arbitration.[19]

First, the individual Defendants work as LHM's General Manager; General Store Manager; Controller and Human Resources Manager; or New Car Manager and Desk Manager.[20] In such capacities, they are certainly LHM's employees and likely qualify as

---

[15] *Granite Rock Co.*, 561 U.S. at 296. This agreement is also subject to California Arbitration Act, which similarly states: "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exist[.]" Cal. Civ. Pro. Code § 1281.2.

[16] *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1077 (Utah Ct. App. 1998) (quoting *Lorber Indus. of Cal. v. L.A. Printworks Corp.*, 803 F.2d 523, 525 (9th Cir. 1986)).

[17] Docket No. 10, at 2.

[18] *Id.*

[19] Docket No. 7-1, at 2.

[20] Docket No. 2-1, at 2–3.

"officers, directors, or agents" as well. Accordingly, the broad language of the contract demonstrates that the individual Defendants are included in the arbitration agreement.

Second, while it is true that the individual Defendants were not signatories to the arbitration agreement, they still may compel arbitration because they "otherwise possess the right" of arbitration.[21] There are traditionally six recognized theories for how a nonsignatory may "otherwise possess" the right to enforce others to uphold an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party beneficiary.[22] In this case, the individual Defendants possess the right of arbitration through the agency, estoppel, and third-party beneficiary theories.

*1. Agency*

Under agency theory, agents "assume the protection of the contract which the principal has signed," and they may "compel arbitration of claims made against [them] by a signatory to the agreement."[23] In other words, one-way protection of agents through arbitration may be enforced after they are shown to be agents of a signatory.

Here, the individual Defendants qualify as agents of LHM and may compel arbitration against Seaborn. The individual Defendants all work at LHM in management positions.[24] As LHM's agents, the individual Defendants may compel but may not be compelled to arbitrate.

---

[21] *Cade*, 956 P.2d at 1077

[22] *See Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1274 (D. Utah 2018).

[23] *Id.* at 1274–75. (emphasis omitted).

[24] Docket No. 2-1, at 2–3.

*2. Estoppel*

The doctrine of estoppel prohibits signatories from "seek[ing] to enforce . . . contractual rights and avoid the contract's requirement that any dispute arising out of" the contract be arbitrated."[25] In other words, estoppel precludes a signatory from "hav[ing] it both ways," by seeking on one hand "to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."[26]

Nonsignatories may compel arbitration in two circumstances: "The first is when the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory. The second is when the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."[27]

In this case, Plaintiff is estopped from precluding the individual Defendants from exercising arbitration rights. First, Seaborn relies on the terms of the written agreement in asserting his claims. Seaborn cannot seek to enforce the contract against the individual Defendants while simultaneously claiming the arbitration clause of the same contract does not apply. Second, Seaborn raises allegations of substantially interdependent and concerted misconduct by LHM and the individual Defendants. Given that most of Seaborn's claims either

---

[25] *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 615–16 (10th Cir. 2014) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)).

[26] *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000).

[27] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011) (internal quotation marks and citations omitted).

expressly name all Defendants or logically include all Defendants in the actions alleged, his complaints against the signatory and nonsigatories are not sufficiently independent to sever.

### 3. Third-Party Beneficiary

Finally, the individual Defendants have a right to arbitration through a third-party beneficiary theory. Unlike estoppel, which looks at the parties' conduct after the arbitration agreement was completed and signed, third-party beneficiary theory looks to the intentions of the parties at the time the contract was executed.[28] If, at the time of contracting, the intent to make someone a third-party beneficiary is "clearly written or evidenced in the contract," then the presumption that the parties were only contracting for themselves is overcome and the named third-party beneficiaries receive the protections and obligations of arbitration.[29]

The Court finds that the individual Defendants qualify as third-party beneficiaries. Seaborn's contract says that binding arbitration shall take place for any "dispute, claim, or controversy . . . related to . . . the Company, its affiliated entities, or their respective officers, directors, employees, or agents."[30] Each individual Defendant is at least an employee of LHM, and as such, are explicitly named as parties for which arbitration must take place. Therefore, the individual Defendants are "clearly written or evidenced in the contract" as third-party beneficiaries.

---

[28] *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 362 (5th Cir. 2003).

[29] *Id.* (internal quotation marks omitted); *see also Bybee v. Abdulla*, 189 P.3d 40, 49 (Utah 2008) (quoting *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 506 (Utah 1980)) (A third party may claim a contract benefit only if the parties to the contract clearly express an intention "to confer a separate and distinct benefit" on the third party.)

[30] Docket No. 7-1, at 2.

B.   CLAIMS

"The Supreme Court has long recognized and enforced a liberal federal policy favoring arbitration agreements. Under this policy, the doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[31] The Tenth Circuit has held that the strength of the presumption favoring arbitration depends on whether an arbitration clause is "broad" or "narrow."[32] "To determine the breadth of an arbitration clause we ask if 'the parties clearly manifested an intent to narrowly limit arbitration to specific disputes' that might arise between them."[33]

"Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."[34] On the other hand, "[u]nder a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview."[35]

The arbitration clause here is broad. Under the agreement, both parties voluntarily agreed to arbitrate "*any* dispute, claim, or controversy" that could be brought under local, state,

---

[31] *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (internal citations and quotation marks omitted).

[32] *Chelsea Family Pharmacy, PLLC v. Medco Healthy Solutions, Inc.*, 567 F.3d 1191, 1200 (10th Cir. 2009) (Gorsuch, J. concurring).

[33] *Id.* at 1196 (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005)).

[34] *Cummings*, 404 F.3d at 1261 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks omitted)).

[35] *Id.* at 1262 (citing *Louis Dreyfus Negoce*, 252 F.3d at 224).

or federal law, and that the agreement applied to all actions by the company, its affiliates, officers, directors, employees, and agents.[36] The agreement also repeatedly said that it was not limited to the examples it listed, and the *only* exclusions it listed were those exclusions already mandated by law such as claims arising under the National Labor Relations Act or the EEOC.[37] All of Plaintiff's claims fall within this broad category and are subject to arbitration.

III.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Compel Arbitration (Docket No. 7) is GRANTED. This action is dismissed without prejudice.

DATED this 1st day of April, 2020.

BY THE COURT:

Ted Stewart
United States District Judge

---

[36] Docket No. 7-1, at 2. (emphasis added).
[37] *Id.*